[No. 52611-7. En Banc. July 9, 1987.]

THE STATE OF WASHINGTON, *Petitioner,* v. RICHARD ELSTON FISHER, *Respondent.*

C. J. Rabideau, Prosecuting Attorney, and *Johnette Sullivan, Deputy,* for petitioner.

*Irene Cleavenger* and *Steven D. Aycock,* for respondent.

DURHAM, J.—Richard Elston Fisher was convicted of two counts of indecent liberties. The trial court imposed sentences longer than the presumptive sentencing range under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. The Court of Appeals reversed the sentences, holding that

the reasons the trial court gave did not justify sentences outside the presumptive range. We hold that the exceptional sentences were justified and reinstate the judgment of the trial court.

Fisher was charged by amended information with two counts of indecent liberties under RCW 9A.44.100(1)(b).[1] The charges stemmed from two incidents in which Fisher manipulated a 5½–year–old boy's penis "to make it hard."

The boy was born on December 22, 1978. He became acquainted with Fisher around July 12, 1984, at a swimming pool in a Pasco trailer court. The boy's grandparents lived at the trailer court, and his mother had brought him there to go swimming. Fisher also resided at the trailer court. Along with several other children, the boy spent time playing in the swimming pool with Fisher.

The first incident occurred within a few days after Fisher and the boy first met. Fisher accompanied the boy to the restroom at the swimming pool. After the boy urinated, Fisher placed his fingers on the boy's penis and moved his fingers back and forth.

The second incident occurred on July 16, 1984. Fisher and the boy went into the men's shower after swimming. Fisher manipulated the boy's penis in a manner similar to that in the first incident.

At trial, the boy (who the court determined was a competent witness) testified that on both occasions he had asked Fisher to go with him to the men's room because his dad wasn't there.

The court found Fisher guilty on both counts of indecent liberties. The prosecution asked the court to impose exceptional sentences outside the presumptive sentencing range. The presumptive range for each count was 15 to 20

---

[1]RCW 9A.44.100(1) provides: "A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

". . .

"(b) When the other person is less than fourteen years of age . . .."

months.[2] The court found that four aggravating circumstances existed in this case:

(a) The defendant knew that the victim was particularly vulnerable or incapable of resisting due to extreme youth;

(b) The defendant committed multiple incidents/acts with the same victim;

(c) The defendant placed himself in a position of trust and confidence with the victim in order to facilitate the commission of the crimes;

(d) The multiple offense policy of the Sentencing Reform Act results in a presumptive sentence which is too lenient[.]

Based on these findings, the trial court concluded that there were substantial and compelling reasons for sentences outside the presumptive range. It imposed an exceptional sentence of 24 months for each count, with the terms to be served concurrently.

Fisher appealed to the Court of Appeals, contending that the trial court erred in imposing sentences outside the standard range. The Court of Appeals reversed the sentences, holding that the reasons given by the trial court did not justify the sentences outside the presumptive range. This court granted the State's petition for review of the Court of Appeals decision.

The SRA provides the following standards which govern appellate review of a sentence outside the presumptive range:

To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

---

[2]On the sentencing grid in the SRA, the seriousness score for the crime of indecent liberties without forcible compulsion, RCW 9A.44.100(1)(b), is VI; the offender score where there is one other current felony conviction is 1. This generates a presumptive sentencing range of 15 to 20 months. *See* RCW 9.94A.310, .320, former .360(9), .400.

RCW 9.94A.210(4). Fisher has never argued that his sentences were clearly excessive. Therefore, for purposes of this case, the relevant portion of RCW 9.94A.210(4) is subsection (a).

 In reviewing an exceptional sentence under the standards in subsection (a), the appellate court must conduct a 2–part analysis. First, it must decide if the record supports the sentencing judge's reasons for imposing the exceptional sentence. Because this is a factual question, the sentencing judge's reasons must be upheld if they are not clearly erroneous. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986). Under the second part of RCW 9.94A.210(4)(a), the appellate court must determine independently, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. *Nordby,* at 518. The reasons must be "substantial and compelling". RCW 9.94A.120(2). They must "take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *Nordby,* at 518.

We hold that the first reason supplied by the trial court, the victim's particular vulnerability due to extreme youth, justifies an exceptional sentence. This reason clearly reflects one of the aggravating circumstances listed in the SRA as a possible consideration in imposing an exceptional sentence. The SRA's list of aggravating circumstances includes the following factor:

> The defendant knew or should have know that the victim of the offense was particularly vulnerable or incapable of resistance due to *extreme youth,* advanced age, disability, or ill health.

(Italics ours.) Former RCW 9.94A.390(2).

 Fisher contends, however, that the sentencing court cannot rely on the extreme youth of the victim as an aggravating factor where the crime for which the offender is being sentenced is indecent liberties under RCW 9A.44-.100(1)(b). He argues that because an element of this offense is that the victim must be less than 14 years old, the

Legislature has already considered the victim's age in determining the presumptive sentencing range for the offense, and, therefore, the sentencing judge cannot rely on the victim's extreme youth in imposing an exceptional sentence.

This court has established that the sentencing judge's reasons for imposing a sentence outside the presumptive range must take into account factors other than those which are necessarily considered in determining the presumptive range for the offense. *Nordby,* at 518. The victim's particular vulnerability due to extreme youth is not a factor which necessarily would have been considered in setting the presumptive sentencing range for indecent liberties under RCW 9A.44.100(1)(b). While the Legislature might have reasoned that victims less than 14 years old were more vulnerable in general than those 14 or older, it could not have considered the particular vulnerabilities of specific individuals.

It is proper for the sentencing court to cite the particular vulnerability of a specific victim due to extreme youth as grounds for an exceptional sentence for the crime of indecent liberties under RCW 9A.44.100(1)(b). An exceptional sentence is appropriate when the circumstances of a particular crime distinguish it from other crimes within the same statutory definition. D. Boerner, *Sentencing in Washington* § 9.6 (1985). It cannot be denied that the specific age of an individual victim is a factor which may distinguish a particular case of indecent liberties under RCW 9A.44.100-(1)(b) from other cases involving the same offense. *See* D. Boerner § 9.7. Victims of this crime range widely in age from 0 to 14 years. To prohibit consideration of the age of the victim in a particular case in sentencing would be to assume that all victims of this offense were equally vulnerable regardless of their age, an unrealistic proposition. A particular victim's special vulnerability due to age clearly is a factor which may distinguish the crime perpetrated against him from other crimes of indecent liberties.

Having determined that the victim's vulnerability due to extreme youth may be a valid reason for imposing an exceptional sentence for indecent liberties under RCW 9A.44.100(1)(b), we must consider if, in this particular case, the trial court erred in relying on this factor. In this case, the victim of the offenses was only 5½ years old. It was reasonable for the trial court to find that his age rendered him particularly vulnerable and incapable of resistance to Fisher's actions, and that Fisher knew of his vulnerability. In other words, the record supports this finding. Moreover, the boy's vulnerability due to his extreme youth makes this crime different from other cases of indecent liberties under RCW 9A.44.100(1)(b). Therefore, this is a substantial and compelling reason which justifies exceptional sentences in this case.

The second reason the trial court gave for imposing sentences outside the presumptive range was that Fisher "committed multiple incidents/acts with the same victim". Presumably, the trial court was referring to the fact that Fisher had sexual contact with the boy on two occasions. The SRA's list of aggravating circumstances includes the following factor in the context of a major economic offense or series of offenses: "The offense involved multiple victims or multiple incidents per victim". Former RCW 9.94A-.390(3)(a). This court has sanctioned the application of this factor to a noneconomic offense, noting the nonexclusive nature of the SRA's list of aggravating circumstances. *State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (infliction of multiple injuries in the course of a second degree assault is a factor which justifies an exceptional sentence). However, in *Armstrong*, the multiple incidents took place in the course of a single offense. In contrast, the two incidents of sexual contact here constituted the two counts of indecent liberties of which Fisher was convicted separately.

 Pursuant to the SRA's provision on sentencing for

multiple current convictions,[3] the trial court took into account Fisher's simultaneous convictions of two counts of indecent liberties in determining Fisher's criminal history, in order to compute his offender score and the presumptive sentencing range. By considering the multiplicity of Fisher's convictions, the trial court already accounted for the multiple incidents underlying those convictions. Therefore, it was not justified in citing Fisher's commission of multiple incidents with the same victim as a reason for imposing an exceptional sentence. This constituted the consideration of a factor which was necessarily accounted for in computing the presumptive range, and thus it was improper. *State v. Nordby, supra* at 518 & n.4 (sentencing judge may not cite offender's criminal history as a reason for an exceptional sentence since criminal history is one of the two components used to compute the presumptive range). Therefore, the multiplicity of incidents in this case did not justify an exceptional sentence.

The trial court's third reason for imposing an exceptional sentence was that Fisher "placed himself in a position of trust and confidence with the victim" in order to further the commission of the crimes. As a threshold matter, we note that there is evidence in the record to support this finding. The boy testified that he asked Fisher to accompany him on both trips to the restroom because his dad wasn't there. This constitutes evidence that a relationship of trust existed between Fisher and the boy on these occasions. In addition, because the sexual contacts occurred in situations during which the boy was relying on Fisher, it is

---

[3]Former RCW 9.94A.400(1)(a) states: ". . . whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history."

The language of RCW 9.94A.400(1)(a) was changed in the 1986 amendments to the SRA. *See* Laws of 1986, ch. 257, § 28, p. 937. To the extent that this amendment constitutes a substantive change, it does not apply retroactively to this case because the statute imposes a penalty. *Johnston v. Beneficial Management Corp. of Am.*, 85 Wn.2d 637, 642, 538 P.2d 510 (1975).

fair to determine that Fisher used the relationship to facilitate the commission of the crimes.

As for whether this reason justifies an exceptional sentence, the SRA's list of aggravating circumstances includes the following factor in the context of a major economic offense: "The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the offense." Former RCW 9.94A.390(3)(d). Considering that this list is merely illustrative and not exclusive, the sentencing judge may rely on this factor in cases involving noneconomic as well as economic offenses. *See State v. Armstrong, supra* at 550.

It is a close question, however, if the trust relationship in this case was significant enough to constitute a substantial and compelling reason for exceptional sentences. The evidence indicates that the boy was accustomed to relying on a family member to take him to the restroom and that he viewed Fisher as a proper substitute for that purpose.[4] On the other hand, Fisher and the boy had become acquainted within only days of when the incidents occurred. A relationship extending over a longer period of time, or one within the same household, would indicate a more significant trust relationship, such that the offender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence. In any event, because we have determined that the boy's extreme youth alone was a sufficient reason for imposing exceptional sentences, we need not decide if the trust factor would be an adequate basis in this case.

The final reason that the trial court provided for imposing exceptional sentences was that the multiple offense policy of the SRA resulted in a presumptive sentence which was too lenient. This reason reflects the language of the following aggravating circumstance listed in the SRA: "The

---

[4]Not only did the boy testify that he asked Fisher to go with him because his father was not there, but his mother testified that usually she or the boy's father accompanied the boy to the restroom.

operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter . . ." Former RCW 9.94A.390(4)(h).[5]

This court has sanctioned reliance on this aggravating factor in a case where the trial court imposed consecutive sentences although a literal application of the multiple offense policy in RCW 9.94A.400 would have resulted in concurrent sentences. Thus, in *State v. Oxborrow,* 106 Wn.2d 525, 534, 723 P.2d 1123 (1986), we concluded that, although the offender's crimes did not meet the requirements for consecutive sentences in RCW 9.94A.400, the trial court was justified in finding that the presumptive sentences would be "clearly too lenient", and, therefore, in imposing consecutive sentences. We noted that in former RCW 9.94A.390(4)(h), the Legislature recognized that the SRA's limitations on consecutive sentences might be inappropriate in exceptional cases. *State v. Oxborrow, supra.*

It is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range. Such was the case in *Oxborrow,* where the offender was convicted of only first degree theft and willful violation of a cease and desist order concerning the sale of securities, but the seriousness of his conduct was far greater than the offenses themselves might suggest, because at least 50 investors were defrauded of over $1 million. Thus, if the multiple offenses resulted in multiple harms to multiple victims, or increasingly severe harm to one victim, the operation of the multiple offense policy in RCW 9.94A.400 might well result in a presumptive sentence that was clearly

---

[5]Because of the scrivener's error in the original SRA, it initially appeared that this factor was applicable only to cases involving the Uniform Controlled Substances Act. Clearly, this factor was never intended to be restricted to cases under that act. *See State v. Oxborrow,* 106 Wn.2d 525, 534, 723 P.2d 1123 (1986). In the 1986 amendments to the SRA, the error was corrected. Laws of 1986, ch. 257, § 27, p. 936.

too lenient.

In the present case, however, the multiplicity of the offenses had no unusually serious consequences which would require consideration beyond that which was exercised in computing the presumptive range. The offenses essentially involved two similar acts and there is no evidence that the multiplicity of the offenses had any egregious effects. While we do not discount the seriousness of Fisher's conduct, we do not believe that this is the sort of case where reliance on the aggravating factor in former RCW 9.94A.390(4)(h) was appropriate.

In summary, we conclude that while some of the reasons given by the trial court were inadequate grounds for exceptional sentences,[6] the victim's particular vulnerability due to extreme youth is a substantial and compelling reason justifying the sentences. We find it unnecessary to remand this case to the trial court for resentencing in light of our decision. The victim's vulnerability due to extreme youth was a sufficiently significant factor to warrant concurrent sentences that were only 4 months longer than the standard range. Even if this were the only factor the trial court had considered in sentencing, we do not believe it would have been an abuse of discretion to impose such sentences. Similarly, in *State v. Nordby,* 106 Wn.2d 514, 723 P.2d 1117 (1986), where we held that two out of three of the trial court's reasons justified an exceptional sentence that was 4 months longer than the presumptive range of 6 to 12

---

[6]In oral remarks during the sentencing proceeding, the trial court also noted that under the SRA, an offender could get credit for good behavior equal to one-third of the sentence. He observed that he had no doubt that Fisher would behave himself while in confinement, and if Fisher were given only the maximum sentence within the standard range, he would be eligible for release after serving two-thirds of 20 months. The trial court stated that this was not enough time for the two offenses.

To the extent that the judge relied on this reasoning to impose exceptional sentences, such reliance was improper. The framework of the SRA indicates that earned early release time is to be considered only after the offender has begun serving his sentence. *See* RCW 9.94A.150(1). Moreover, it would be inappropriate to impose a sentence outside the presumptive range based on an entirely speculative prediction of the likely behavior of an offender while in confinement.

months, we did not remand for resentencing.[7] The trial court is affirmed.

BRACHTENBACH, ANDERSEN, CALLOW, and GOODLOE, JJ., and CUNNINGHAM, J. Pro Tem., concur.

PEARSON, C.J. (dissenting)—I believe that when an appellate court upholds only one of four substantial reasons listed by the trial court as basis for sentencing outside the presumptive range, the appellate court's duty is to remand for resentencing. I therefore dissent from the majority's resolution of this action.

No Washington case has considered the proper disposition of a cause after determining that some of several "substantial and compelling" reasons given by the trial court to justify an exceptional sentence fail as a matter of law. Rather, because the issue has never before been raised, after resolving substantive issues appellate courts appear to dispose of cases without addressing whether a case should be remanded, reversed or affirmed. *E.g., compare State v. Nordby,* 106 Wn.2d 514, 723 P.2d 1117 (1986) (two of several reasons listed by the trial court upheld; court deemed that those reasons alone justified the exceptional sentence imposed and thus enforced the sentence) *and State v. Armstrong,* 106 Wn.2d 547, 723 P.2d 1111 (1986) (two of four reasons listed by the trial court justify an exceptional sentence; appellate court enforced the sentence imposed) *with State v. Harp,* 43 Wn. App. 340, 717 P.2d 282 (1986) (one of four reasons listed by the trial court failed; court

---

[7] In declining to remand this case, we do not mean to foreclose the possibility of remanding for resentencing in other cases where fewer than all of the sentencing court's reasons for an exceptional sentence are upheld on review. It is conceivable that a case could arise where remand would be appropriate. For example, if we invalidated certain factors upon which the sentencing judge obviously placed considerable weight in his sentencing decision, a remand for resentencing based on the valid factors remaining might be warranted. However, if we automatically remanded every case where we upheld only some of the sentencing court's reasons for an exceptional sentence, we would be imposing an unnecessary burden on the trial courts.

remanded for resentencing). Even our discussions on the proper appellate standard of review establishing the abuse of discretion test pertain only to whether each reason listed by the trial court constituted a "substantial and compelling" reason justifying an exceptional sentence, and do not squarely address the proper appellate posture once one or more reasons listed by the trial court fail. Appellate courts appear to be acting as primary sentencing courts, exercising their own discretion to affirm a sentence even after deciding as a matter of law that the trial court improperly considered one or more factors as justification for an exceptional sentence. I believe this court should squelch all future exercises of appellate discretion under the sentencing reform act.

A reasonable reading of the sentencing reform act requires the appellate court to remand a case for resentencing after determining as a matter of law that aggravating circumstances upon which the trial court's original exercise of discretion was based have failed. The appellate court should affirm the original trial court sentence only in the unique situation when the appellate court determines as a matter of law that no reasonable trial court could impose any sentence but the one actually imposed, given the aggravating factors upheld on review.

The scheme of the sentencing reform act calls for the trial court to exercise its discretion in light of the unique facts of each case. RCW 9.94A.120(2) and .390 provide that the sentencing court may, in its discretion, impose an exceptional sentence if it finds substantial and compelling reasons, and RCW 9.94A.010 evinces that the purpose of the sentencing reform act is to retain the sentencing court's discretionary ability to tailor punishment to individual situations. The job of the Court of Appeals, by contrast, is to develop sentencing policies and determine whether the trial court properly considered certain aggravating circumstances in the exercise of its discretionary decision to impose an exceptional sentence. RCW 9.94A.210(4), (6). In no terms does the sentencing reform act divest trial courts of their

power to apply the unique facts of each case to the law as outlined by courts of appeal.[8] In fact, the act was designed so that trial courts could address each case individually and in light of its unique circumstances, basing their decisions on uniform standards. D. Boerner, *Sentencing in Washington* §§ 9.2, 9.5 (1985).

Also, appellate courts simply cannot and should not predict the weight actually given by the trial court to each listed reason for going outside the standard range. The trial court should be given the opportunity to reconsider the exceptional sentence imposed, given the aggravating factors that the appellate court determines the sentencing court may weigh in light of the unique facts of that particular case. To uphold a sentence originally imposed on the basis of illegal reasons undercuts the sentencing reform act policy of promoting equitable distribution of punishment and uniformity of sentencing for similar crimes and situations.

I would therefore remand this action to the trial judge for resentencing so that discretion may be exercised in light of the one aggravating factor we have upheld and the unique facts of this case.

UTTER and DORE, JJ., concur with PEARSON, C.J.

Reconsideration denied September 15, 1987.

---

[8]In fact, this is one area in which the Legislature did not follow Minnesota law when composing the sentencing reform act; the Minnesota Supreme Court has power to "direct entry of an appropriate sentence". Minn. Stat. Ann. § 244.11 (Supp. 1987). *See State v. Nordby,* 106 Wn.2d 514, 521 n.5, 723 P.2d 1117 (1986) (Utter, J., dissenting).