[Nos. 10723-0-III; 10724-8-III;    Division Three.    October 15, 1991.]
10725-6-III; 10726-4-III.

THE STATE OF WASHINGTON, *Respondent*, v. BOBBY JOE
HOLT, *Appellant*.

*Paul J. Burns,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Steven J. Kinn, Deputy,* for respondent.

THOMPSON, J. — Bobby Joe Holt pleaded guilty to four counts of second degree burglary. In these consolidated appeals, he seeks reversal of an exceptional sentence above the standard range. We affirm.

The defendant was paroled from the custody of the Department of Corrections on August 17, 1989. On August 29, September 17, September 25, and September 26, 1989, he burglarized four different Spokane residences. At the sentencing hearing, the trial court considered the following: a presentence investigation report; Department of Corrections offender files; testimony of Laurie Staudt, an employee of the Department of Corrections; testimony of one burglary victim; and testimony of the defendant.

The defendant had been convicted of two counts of second degree burglary in 1982 and one count in 1985. In addition, he had been convicted of second degree possession of stolen property in 1984 and possession of a controlled substance in 1989. As a juvenile, the defendant had three criminal adjudications for second degree burglary, one for third degree theft, one for attempted second degree burglary, and one for urinating in public and possession of alcohol. The juvenile criminal adjudications occurred in 1980 and 1981. Without consideration of his juvenile adjudications, the defendant's offender score was 12. The standard sentencing range for the four burglaries, given an offender score of 9 or more, is 43 to 57 months.

Ms. Staudt testified that the defendant had been paroled on three occasions and each parole had been revoked. The most recent parole on August 17, 1989, required him to reside at the Alberta Apartments (Alberta House) in Spokane. Alberta House was described as a drug and alcohol free environment. Its employees assisted clients in finding employment; drug, alcohol and mental health treatment; and financial help. The defendant was instructed to attend a minimum of two Alcoholics or Narcotics Anonymous meetings each week.

The defendant reported to his parole officer on the morning of August 17 and was to return to obtain a travel permit later that day. He did not show up. He reported once to Alberta House, but did not comply with any other conditions of parole.

The Department of Corrections recommended a 90-month sentence for the defendant. The State recommended a 70-month sentence. The trial court imposed an exceptional sentence of 76 months. It found the following aggravating circumstances:

### VI

A. Defendant's past failure to comply with the conditions of his parole demonstrates an inability to adjust after his release from custody. Such a failure to adjust to supervision constitutes evidence that the standard range of only fifty-seven (57) months would not adequately protect the public from defendant's criminal activity.

B. At the time of his sentencing, defendant blamed others almost exclusively for his current criminal conduct.

C. Defendant's offender's score of twelve (12) is 33% above the high end of nine (9) for the crime of Second Degree Burglary. The high end standard range of fifty-seven (57) months is clearly [too] lenient to hold defendant accountable for the four (4) Second Degree Burglaries currently before this court.

D. The current offenses before the court involved multiple victims.

The defendant contends the record does not support findings 6(A) and (B). He also contends an exceptional sentence cannot be based on an offender score of 12, blaming others for criminal conduct, and multiple victims.

The State contends the record supports the findings and the findings justify the exceptional sentence. The State also contends an offender score of 12, coupled with four current offenses, justifies a departure from the standard range.

■ As set forth in *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991):

Review of an exceptional sentence is governed by RCW 9.94A.210(4). An appellate court is to analyze the appropriateness of an exceptional sentence by answering the following three questions under the indicated standards of review:

1. Are the reasons given supported by evidence in the record? As to this, the standard of review is "clearly erroneous".

2. Do the reasons justify a departure from the standard range? The standard of review on this is as a "matter of law".
3. Is the sentence clearly [too excessive or] too lenient?[1] The standard of review on this last question is "abuse of discretion".

(Footnotes omitted.)

■ The first inquiry is whether the findings are supported by evidence in the record. A trial court's sentencing findings should be upheld unless they are clearly erroneous. *State v. Pascal*, 108 Wn.2d 125, 135, 736 P.2d 1065 (1987). Sentencing findings not challenged on appeal are verities. *Allert*, at 168.

In finding 6(A), the court found the defendant exhibited an inability to adjust to supervision and the standard sentence would not protect the public from his criminal activity. In finding 6(B), the court found the defendant blamed others almost exclusively for his current criminal conduct. Both findings are supported by the record. However, although both parties contend "future dangerousness" was the "aggravating circumstance" being addressed by the court in these findings, it is not clear this is in fact so. We need not rely on this issue, however, because the exceptional sentence was justified on other grounds.

The defendant contends the trial court erred as a matter of law in considering his offender score as an aggravating factor. He relies on *State v. Pascal*, *supra*, *State v. McAlpin*, 108 Wn.2d 458, 465, 740 P.2d 824 (1987) and *State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986).

■ Clearly a "high" offender score under the Sentencing Reform Act of 1981 (SRA), standing alone, is insufficient to justify an exceptional sentence. *E.g.*, *State v. Pascal*, *supra*; *State v. Nordby*, *supra*. However, an exceptional sentence may be justified "when a defendant's multiple current convictions, combined with his high offender score, would

---

[1]In *Allert*, the question was whether the sentence was too lenient. However, in *State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987), the court formulated the same question and adopted the same standard for sentences alleged to be too lenient as those alleged to be too excessive. *See State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986).

otherwise result in there being no additional penalty for some of his crimes." *State v. Stephens,* 116 Wn.2d 238, 240, 803 P.2d 319 (1991).

> In this case, as in *Garnier,*[2] the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes — crimes for which there is no additional penalty. This is the issue raised by the trial court's final finding that imposition of the standard sentence "for these offenses with the crimes for which he is being sentenced is clearly too lenient in light of the purposes set forth in RCW 9.94A.010." This is clearly a reference to RCW 9.94A.390(2)(g),[3] which states that upward departure from the sentencing guidelines may be justified where "[t]he operation of the multiple offense policy of RCW 9.94A-.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010."

*Stephens,* at 243.

In *Stephens,* the defendant had an offender score of 19 based, in part, upon eight current offenses before the sentencing court. The exceptional sentence of 96 months imposed by the trial court was upheld.

> Any other rule would mean that all additional counts, whether 6 (as in this case) or 60, would be free from additional punishment. Such a rule would be against public policy and inconsistent with the stated purposes of the SRA.

*Stephens,* at 245.

In *Stephens* and *State v. Garnier,* 52 Wn. App. 657, 763 P.2d 209 (1988), *review denied,* 112 Wn.2d 1004 (1989), the defendants had higher offender scores than the defendant here. Additionally, the defendants in both *Stephens* and *Garnier* committed more current multiple offenses. Nevertheless, the defendant's offender score here would have been 6 *before* inclusion of the four current burglaries. If the standard sentencing range were applied, it would result in 1½ "free" burglaries under the *Stephens* analysis. Stated differently, the defendant would presumptively receive the

---

[2]*State v. Garnier,* 52 Wn. App. 657, 763 P.2d 209 (1988), *review denied,* 112 Wn.2d 1004 (1989).

[3]Former RCW 9.94A.390(2)(f).

same sentence for three burglaries as he would for four burglaries. As the State contends, the issue is whether the standard sentence was "clearly too lenient" as the sentencing court determined in finding 6(C).

*Stephens* addressed the issue of when the "clearly too lenient" factor justifies an exceptional sentence by quoting *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987):

> "[I]t is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range."

*Stephens*, at 244. We find the test articulated in *Fisher* and approved in *Stephens* has been satisfied here. We conclude that the facts in this case justify an exceptional sentence under the very limited "clearly too lenient" criteria found acceptable in *Stephens*. Since this circumstance alone justifies imposing the exceptional sentence, we need not address the other issues raised by defendant.

All three criteria set forth in *Allert* for a review of an exceptional sentence have been considered by this court. Evidence in the record supports the finding the standard range is clearly too lenient. Because the sentence is clearly too lenient, a departure from the standard range is justified. The sentence is not clearly too excessive.

We affirm.

SHIELDS, C.J., and MUNSON, J., concur.